## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ALEXANDER L. BLANCARTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 11-cv-2567 JAR/KGG |
| ) | |
| PROVIDER PLUS, INC., ) | |
| ) | |
| Defendant. ) | |

### PROVIDER PLUS, INC.'S RESPONSE TO PLAINTIFF ALEXANDER BLANCARTE'S MOTION FOR CONDITIONAL CERTIFICATION OF CLASS CLAIMS UNDER §216(b) OF THE FLSA

Defendant Provider Plus, Inc. ("Provider Plus"), for its Response to Plaintiff's Motion for Conditional Certification of Class Claims under § 216(b) of the FLSA, (1) opposes conditional certification of Plaintiff's proposed class, (2) objects to Plaintiff's proposed notice, and (3) objects to Plaintiff's proposed notice distribution procedures.

**I.  Background**

For more than twenty years, family-owned Provider Plus has supplied durable medical equipment to hospitals, hospices, nursing homes and other health care providers, as well as individual patients. The Provider Plus locations (save Lenexa) have full retail showrooms to display their products, which include everything from specialty beds, lift chairs, walkers, wheelchairs and scooters to incontinence supplies, transfer benches, raised toilet seats, grab bars, commodes and shower chairs. The company has its headquarters and largest showroom in St. Louis, with other Missouri offices in O'Fallon, Festus, Cape Girardeau, Washington, Poplar Bluff, Sikeston and Jefferson City. It has an office in Fairview Heights, Illinois and another in Lenexa, Kansas.

Provider Plus opened its Lenexa location in 2009, and Plaintiff worked there as a Delivery Driver/Technician for less than two years. Despite his short tenure and lack of exposure to Defendant's operations, Plaintiff seeks conditional certification of a collective action for the Delivery Drivers/Technicians at all ten company locations. Plaintiff has not met his burden to permit such a collective action for Lenexa, much less company-wide.

## II.     The Standard for FLSA Conditional Certification.

Collective actions are intended to address common issues of law and fact in one proceeding, for the sake of judicial efficiency. *Hoffman-La Roche, Inc. v. Sperling¸* 493 U.S. 165, 170 (1989). Under the FLSA and controlling Tenth Circuit authority, a plaintiff seeking certification of a collective action must (1) establish that plaintiff and the other members of the putative class are "similarly situated," 29 U.S.C. § 216(B) (2011), and (2) provide "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violated the FLSA. *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1102 (10th Cir. 2001). Without these elements, the requisite common facts and legal issues for a collective action do not exist.

Conditional certification of a collective action requires more than just token, conclusory allegations. "While this standard does not require…plaintiff to come forward with actual proof of a [class-wide violation]," a plaintiff must "provide more than his own speculative allegations, standing alone." *Stubbs v. McDonald's Corp*., 227 F.R.D. 661, 666 (D. Kan. 2004). Though the plaintiff's burden is "not onerous, neither is it invisible." *Stiles v. FFE Trans. Serv., Inc.*, No. 3:09-CV-1535-B, 2010 WL 935469, at *2 (N.D. Tex. Mar. 15, 2010). Plaintiff Blancarte's motion and supporting suggestions do not present a factual or legal basis for certification.

FLSA plaintiffs seeking conditional certification may not simply imply a company-wide policy or practice. In 2010, Judge Lungstrum rejected the deposition testimony of an opt-in

plaintiff as lacking the "substantial allegations" of a violative policy or practice across defendant's locations. "Mr. Raleigh's testimony, standing alone, simply does not permit the inference that non-maintenance workers [at the Fayetteville facility] were required to perform pre-shift work or post-shift work. Indeed, Mr. Raleigh admitted that he was never told he had to perform pre-shift or post-shift work, he simply 'understood' that fact ...." *Braun v. Superior Industries, Inc.,* No. 09-2560-JWL, 2010 WL 3879498 (D. Kan. Sept. 28, 2010) (limiting certification to one of five facilities). The *Braun* plaintiffs spent months conducting discovery on the certification question, but like plaintiff Blancarte, they failed to provide an adequate basis for the broad certification sought.

Self-serving affidavits will not suffice. In *Stubbs v. McDonald's Corp.*, *supra*, Judge Murgia denied conditional certification when plaintiff's affidavit contained only hearsay, conclusory assertions that he and managers at other McDonald's were subject to the same policy or practice. 227 F.R.D. 661. "[P]laintiff's affidavit made very conclusory and general allegations [and a]lthough Plaintiff's affidavit states that he had spoken with other first and second managers who shared his same job duties and also were not compensated for overtime worked, plaintiff did not provide the court with the names of, or affidavits from, any of these individuals." *Id.* at 664, 666. The deposition testimony of Provider Plus' corporate representatives do not support conditional certification, and Plaintiff Blancarte's own affidavit suffers from the same deficiencies as the plaintiff in *Stubbs*.

### III. There are No Substantial Allegations the Proposed Class Members Suffered from a Single Decision, Policy, or Plan that Violated the FLSA.

#### A. Defendant's Written Policies Comport with the FLSA.

Plaintiff does not dispute that Provider Plus' written employee compensation policies comport with the FLSA. The company's Overtime Pay policy states, "Non-exempt or hourly

paid employees will receive overtime pay for hours in excess of 40 hours worked during the same work week." Def. Exh. A.  As for working through lunch, Provider Plus' policy reads, "Employees may not voluntarily work during their lunch hour to earn overtime pay or to leave early, unless prior approval has been obtained from [a] supervisor." *Id*.  It is uncontroverted that Defendant's written policies are consistent with the FLSA.  Plaintiff must show that there was a "corporate decision to ignore [the] published policies and refuse to pay for [compensable time]." *Saleen v. Waste Management, Inc.*, No. 08-4959, 2009 WL 1664451, at *4 (D. Minn. June 15, 2009).

### B.     Provider Plus Did Not Deviate from its Written FLSA Policies.

Plaintiff makes no substantial allegations that Provider Plus deviated from its written policies in violation of the FLSA.  He claims then-Lenexa manager Shawn Fields and company vice president Jeff Serafin told the Delivery Drivers/Technicians "that we would not be paid for [time worked during lunch] and would be reprimanded and/or fired" for recording it.  Pl. Exh. 1.  Plaintiff, however, fails to provide any information about <u>when</u> this occurred, <u>who</u> witnessed it, or <u>how</u> they allegedly communicated this information.  Plaintiff also fails to provide any instances when the threat in the alleged communication was actually carried out.

In his motion for certification, Plaintiff references one example of unpaid compensation – where an employee was allegedly "not paid fully for the time recorded on the employee's biweekly time sheets."  Pl. SOF at ¶ 10.  Plaintiff himself is the lone example, and he is wrong about not being paid.  Plaintiff points to a single biweekly time sheet on which he recorded 90 hours, and then asserts that he was paid for only 82 hours during that pay period. *Id*.  Provider Plus did not refuse to pay Plaintiff for hours worked; rather, Plaintiff recorded hours for which he was not entitled to be paid.  The eight "missing" hours at issue were for a company holiday (New Year's Day 2010), and, pursuant to Defendant's written policy, Plaintiff was not entitled to

4

holiday pay at that time because he was still within the first 90 days of his employment. *See* Def. Exh. A at p.2; Def. Exh. B at p. 58, lns. 4-6.

      **C.**      **None of Plaintiff's Co-workers Share His Complaint.**

In his affidavit, Plaintiff purports to speak on behalf of all Delivery Drivers/Technicians, consistently using the words "we" and "our" (e.g. "Even if **our** work schedule is so busy that **we** do not have time to take an hour lunch so that we must work through lunch, **we** are not paid for an hour of work."). Pl. Exh. 1 at ¶ 3. Plaintiff's use of the "Royal We" does not substitute for the substantial allegations required for the proposed certification.

Plaintiff does not name a single co-worker who shares his concerns, let alone one willing to provide an affidavit. In *Stubbs*, a case where certification was denied, plaintiff stated in his affidavit that he had "numerous conversations with other [employees in his position]" who told plaintiff they suffered similar FLSA violations. 227 F.R.D. 661 at 666. Plaintiff Blancarte's affidavit is even bereft of such hearsay. In his affidavit, Plaintiff Blancarte does not claim to have spoken to any other Delivery Drivers/Techs about compensation at all, much less the purported FLSA violations. Even more so than in *Stubbs,* these "very conclusory and general allegations" fall short of the mark, and do not support certification. *Id*.

No one else has opted-in to this suit, either. The named plaintiff in a collective action is expected to "proffer some evidence that other similarly situated individuals desire to opt in to the litigation." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007); *see also Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991). This is a critical issue, as "[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants." *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007). As the *Parker* court explained,

> [A] plaintiff must do more than show the mere *existence* of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit. And, if those other, similarly situated persons were to decline to opt in to the case, no purpose would have been served by "certifying" a collective-action "class" – the case ultimately would involve no one other than the plaintiff.

*Parker*, 492. F. Supp. 2d at 1165. In the case at bar, there is no indication that any other Deliver Drivers/Technicians desire to join this litigation.

Plaintiff has had seven months to conduct discovery on the specific issue of conditional certification, and has in hand the names and contact information for other Deliver Drivers/Technicians. Plaintiff still stands before the Court alone – he has no co-plaintiffs, no co-worker affidavits and cannot name another employee who shares his concerns. Simply put, Plaintiff has failed to provide any basis for conditionally certifying what, by all indications, is a "collection" of one.

### D.  Any Collective Action Should be Limited to the Lenexa Office.

Plaintiff worked at only one location, Lenexa. At that site, he only worked with two other Delivery Drivers/Technicians. To Defendant's knowledge, Plaintiff's only visit to any of the nine offices outside of Lenexa was for his brief orientation and training in St. Louis. He certainly is not able to make substantial allegations of the specific compensation practices at each particular Provider Plus location.

Plaintiff's alleged support for certification is limited to the Lenexa office. The Provider Plus deposition testimony upon which Plaintiff relies does not address any specific practices or procedures outside of the Lenexa office. *See, e.g.*, Pl. Exh. 2 at p. 28, lns. 14-21:

Q. …[D]o you have someone on-call then from 5:00 p.m. to 8:00 a.m.?

**A.  Are we talking about Lenexa?**

Q. Is that your Kansas City office?

6

> **A.     Yes.**
>
> Q.     Okay. Yes, please.
>
> **A.     Lenexa specifically has drivers that work on a normal shift outside of the 8:00 to 5:00.**

If one reads beyond the deposition excerpt attached by Plaintiff, it becomes evident that Plaintiff's "evidence" of specific procedures is restricted to his own experiences in the Lenexa office. *See* Def. Exh. B.

Lenexa, unlike some other Provider Plus locations, had its own branch manager, who was responsible for approving employee time sheets, requests to work through lunch, and requests to work overtime. Def. Exh. B. at pp. 34-36, 52, and 62; *see also* Def. Exh. A at p. 1. Any collective action by Delivery Drivers/Technicians should be limited to the Lenexa, Kansas office.

## IV.     Plaintiff's Proposed Notice Form is Not Appropriate and Should be Rejected.

Plaintiff submitted with his motion a proposed form of notice. Provider Plus has numerous objections to the proposed form. Provider Plus requests that this Court rule on its specific objections set forth below, and then allow the parties a reasonable time to meet and confer and attempt to agree on the specific language of the notice in light of the Court's rulings. This is the typical procedure utilized in this Court. *See, e.g.*, *Clopton v. TSS, Inc.*, No. 10-1229-JAR-JPO, 2011 WL 1430015 (D. Kan. Apr. 14, 2011) (directing parties to confer on the proposed notice); *Shockey v. Huhtamaki, Inc.*, 730 F. Supp. 2d 1298, 1307 (D. Kan. 2010) (same); *Pivonka v. Bd. of Cnty. Comm'rs of Johnson Cnty., Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *5 (D. Kan. July 27, 2005) (same).

### A.     Plaintiff's Proposed Notice is Based on a Rule 23 Notice.

As the model notice provided by Plaintiff demonstrates, the form at issue was specifically designed for a Rule 23 (opt-out) class action, which is very different than a § 216(b) (opt-in) collective action.  *See* Pl. Exh. 7. And although Plaintiff modified the form, those modifications do not solve the fatal flaw with Plaintiff's proposed notice: it is based on a faulty premise. For example, Plaintiff's notice falsely tells putative class members that "your legal rights are affected" and that they must make a choice "now." Pl. Exh. 5 at p. 1. While this would be true if this were a Rule 23 class – in which class members would be bound by the judgment in the case unless they opted out – that is not the case in a collective action case. The fact is that no one's "legal rights are affected" unless they affirmatively opt-in.

Perhaps the best evidence that Plaintiff is relying on the wrong form of notice is the fact that Plaintiff has intentionally reversed the order of the options listed on the first page of the FJC form and has changed "Ask to be <u>Excluded</u>" to "Ask To Be <u>Included</u>," as shown in this side-by-side comparison of the FJC Rule 23 notice and Plaintiff's proposed notice.

| Model FJC Rule 23 Notice | Plaintiff's Proposed Notice |
|---|---|
| **DO NOTHING** | **ASK TO BE INCLUDED** |
| **ASK TO BE EXCLUDED** | **DO NOTHING** |

Pl. Exhs. 5 and 7.

Plaintiff's proposed notice repeats this distortion throughout. For example, on page 3 of his notice Plaintiff proposes telling putative class members that, "If you fail [to join], you…may be jeopardizing your right to sue." But such a claim is false. Employees who fail to join have just

8

as much right to sue tomorrow as they do today – they have simply decided not to participate in the lawsuit to date.

### B. Plaintiff's Proposed Notice Improperly Suggests Court Approval of Plaintiff's Claims.

As Judge Melgren has noted, "[i]t is axiomatic that the class action notice must 'avoid even the appearance of judicial endorsements of the merits of the action.'" *Hadley v. Wintrust Mortg. Corp.*, No. 10-2574-EFM, 2011 WL 4600623, at *3 (D. Kan. Oct. 3, 2011), *vacated by settlement*, 2011 WL 8177791 (D. Kan. Nov. 4, 2011). Plaintiff's proposed notice states: "*A court authorized this notice. This is not a solicitation from a lawyer.*" Yet, at least in its current form, Plaintiff's proposed notice is just that – a solicitation from a lawyer. Moreover, it is a solicitation that begins with this Court's title and is specifically identified as being authorized by this Court. As such, it is nothing more than a veiled use of this Court's imprimatur to do what Plaintiff's attorneys have been unable to do independently thus far – increase their number of clients.

In this regard, the Court's attention is directed to a recent decision in the Western District of Missouri where Judge Kays questioned whether "use of the 'Western District of Missouri' heading…suggest[s] Court approval of the notice or the merits of the case." *Mahmood v. Grantham University, Inc.*, Case No. 10-00621-CV-W-DGK, Order, at 6 (W.D. Mo. May 19, 2011), Def. Exh. C. Importantly, the notice that was eventually sent out in that case did not contain the court name in the heading and did not state that it had been approved by a judge. *See* Def. Exh. D.

### C. Plaintiff's Proposed Notice Fails to Inform Class Members of their Duties.

In addition to misleading putative class members about the proposed benefits of joining the class, Plaintiff's proposed form of notice fails to inform putative class members of their

9

obligations if they join the class. Specifically, it fails to inform recipients that "they may have to be deposed, required to submit to written discovery, compelled to testify, and obligated to appear in [Kansas City, Kansas]." *Smith v. Pizza Hut, Inc*., No. 09-CV-01632-CMA-BNB, 2012 WL 1414325, at *8 (D. Colo. Apr. 21, 2012); *see also Hadley*, 2011 WL 4600623, at *3 ("it is reasonable and necessary to inform putative plaintiffs that they may required to travel to Kansas City for depositions and trial"); *Wass v. NPC Intern., Inc*., No. 09-2254-JWL, 2011 WL 1118774, at *10 (D. Kan. Mar. 28, 2011); *Creten-Miller v. Westlake Hardware, Inc*., No. 08-2351-KHV, 2009 WL 2058734, at *5 (D. Kan. July 15, 2009).

Plaintiff's proposed notice also "fails to inform potential plaintiffs that they may have to pay costs if they do not prevail." *Smith v. Pizza Hut, Inc*., 2012 WL 1414325, at *7; *see also Hadley*, 2011 WL 4600623, at *4 ("the notice should warn putative class members that they may be required to pay costs if [they] do not prevail"); *Creten-Miller v. Westlake Hardware, Inc*., 2009 WL 2058734, at *5.

### D. Plaintiff's Proposed Notice Fails to Set a Deadline for Response.

In accord with accepted case management guidelines, a notice should set a reasonable deadline for putative class members to respond by. *See Reab v. Elec. Arts, Inc*., 214 F.R.D. 623, 629-30 (D. Colo. 2002) (sixty days is appropriate notice period); *Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (60 days); *Jancich v. Stonegate Mortg. Corp*., No. 11-2602-EFM-KMH, 2012 WL 380287, at *3 (D. Kan. Feb. 6, 2012) (same).  Plaintiff's proposed notice does not even suggest a deadline.

### V. Plaintiff's Proposed Notice Distribution Procedures Are Improper.

Plaintiff asks that this Court order Provider Plus to provide the name, address, and telephone numbers of putative class members, as well as to post the notice at the workplace.

Provider Plus objects to Plaintiff's plan to call putative class members, as well as to Plaintiff's request that Provider Plus post the notice in the workplace.

### A. Plaintiff's Attorneys Should Not Call Potential Class Members.

Rule 7.3 of the Kansas Rules of Professional Conduct provides that "[a] lawyer shall not by…live telephone or real-time electronic contact solicit professional employment from a prospective client." KRPC 7.3. The Comments to the Rule explain that "[t]here is a potential for abuse inherent in…live telephone or real-time electronic contact by a lawyer with a prospective client known to need legal services" for such contacts "subject the layperson to the private importuning of the trained advocate in a direct interpersonal encounter." KRPC 7.3 Comment 1. The Comments go on to state that "[t]he prospective client…may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately" and "[t]he situation is [therefore] fraught with the possibility of undue influence, intimidation, and over-reaching." *Id*.

In accordance with the Rule and Comments above, Plaintiff's request for telephone numbers should be denied. *See Lewis v. ASAP Land Express, Inc*., No. 07-2226, 2008 U.S. Dist. LEXIS 46362, *1 (D. Kan. June 12, 2008) ("As to plaintiff's request for telephone numbers…, the Court finds that plaintiff has not justified discovery of this information"); *Barnwell v. Corr. Corp. of Am*., No. 08-2151-JWL, 2008 WL 5157476, at *6 (D. Kan. Dec. 9, 2008) (limiting production of telephone numbers to putative class members whose mailed notices were returned as undeliverable).

### B. Workplace Posting Would be Unnecessary, Ineffective, and Confusing.

Plaintiff asks that in addition to having the notice mailed to class members, Provider Plus be required to post the notice in the workplace. Provider Plus objects to this additional proposed

procedure for the same reasons this Court has previously rejected it.  In a recent decision, Judge Melgren rejected a request for posting of the notice in the workplace, writing:

> Wintrust argues that it should not be required to post notice of the collective action at Wintrust's offices because "facility posting is an overbroad, ineffective, and confusing means of communicating with putative class members." The Court agrees. Wintrust has already identified and provided contact information for the discrete number of individuals who make up the putative class. Additionally, workplace postings do not provide effective delivery of consent forms. Posting the collective action notice at Wintrust's offices is thus cumulative, overreaching, and likely to cause confusion among Wintrust's employees.

*Hadley*, 2011 WL 4600623, at *12.

> Judge Lungstrum reached a similar conclusion last year as well:
>
> The Court is not persuaded that the likely benefits from a posting requirement outweigh the likely burden on defendant from having to post the notice in so many stores. As noted by defendant, such posting does not account for the consent forms. *See Lewis v. ASAP Land Express, Inc*., No. 07–2226, slip op. at 2 n. 1 (D. Kan. June 12, 2008) (making that point in refusing to require the defendant to post the notice in its offices). Moreover, the potential class members reached by such posting—current drivers—are the same employees for whom defendant most likely has current address information. Thus, the Court concludes that mailing provides sufficient notice here and represents the most efficient means of providing notice in this case.

*Wass*, 2011 WL 1118774, at *12.  Accordingly, Provider Plus objects to any notice distribution procedure other than mailing.

WHEREFORE, defendant Provider Plus prays the Court deny the requested certification of a collective action and such other and further relief the Court deems proper.

Respectfully submitted,

*/s/Tedrick A. Housh*
Tedrick A. Housh, III (KS Bar No. 15414)
Clay V. Fulghum (KS Bar No. 23902)
LATHROP & GAGE LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2684
Telephone: (816) 292-2000
Facsimile:  (816) 292-2001

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Brandee Bower
Michael F. Brady
Brady & Associates
10901 Lowell Avenue, Suite 280
Overland Park, Kansas 66210

*Attorneys for Plaintiff*

*/s/Tedrick A. Housh*
An Attorney for Defendant

18977999v2